IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JASON ROCHE, SHANE TALLEY, BLAKE VINES,**                    **PLAINTIFFS**
**JAMES WEDGEWORTH, BRANDON BURRIS, SEAN**
**FOLLIS, DAVID JURGENS, MARK BURTON, JEFF**
**GANDER, SKYLER GASSNER, PATRICK MASTERSON,**
**CHRIS SCHELL, JUSTINO PENA, JUSTIN MULLER,**
**JAMES THOMPSON, KELBY GOGENOLA, KYLE STURGISS,**
**DONNIE LANG, MICHAEL HATALA, JONAS ROBBINS,**
**JOE CONGER, ROY LEWIS, GEORGE BRICE, DUSTIN**
**MOORE, JEREMY RICHARDSON, CHRIS MITCHELL**
**and MATTHEW GRIFFIN, Each Individually and**
**on behalf of All Others Similarly Situated**

vs.                               No. 5:15-cv-268-XR

**S-3 PUMP SERVICE, INC.,**                              **DEFENDANTS**
**MALCOMB SNEED and LINDA SNEED**


### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### ON THE INAPPLICABILITY OF THE MOTOR CARRIER ACT EXEMPTION

COME NOW Plaintiffs Jason Roche, *et. al*., by and through their counsel Josh
Sanford of Sanford Law Firm, PLLC, and for their Motion for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption, and in support thereof, they do
hereby state and allege as follows:

1.      Plaintiffs brought this suit in order to recover unpaid minimum and overtime
wages, etc., liquidated damages, prejudgment interest, costs and attorney fees pursuant
to 29 U.S.C. § 216(b) of the Fair Labor Standards Act of 1938 ("FLSA").

2.      The undisputed factual record establishes that Plaintiffs fall outside of the

Page 1 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

scope of the narrowly-construed Motor Carrier Act ("MCA") exemption to the Fair Labor Standards Act's ("FLSA") overtime pay mandate under the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244 ("TCA").  Because Plaintiffs worked on vehicles with gross vehicle weight ratings of 10,000 pounds or less (and, inconsequentially, over 10,000 pounds) they are "covered employees" under the TCA's exception to the MCA and are entitled to overtime protection pursuant to the FLSA.  As result, they are, as a matter of law, entitled to their overtime wages for hours worked over forty (40) hours in a single workweek during all such workweeks while they were employed by Defendant S-3 Pump Service, Inc.  ("Defendant" or "S-3"), within the statute of limitations.

3.     Based on the TCA and the uncontrovertable evidence submitted supporting their position, Plaintiffs are "covered employees" entitled to overtime wages under federal law, *notwithstanding* the MCA exemption.  Plaintiffs' Motion on the inapplicability of the MCA exemption should be granted in its entirety.

4.     Because Defendant carries the burden of proving the applicability of the MCA exemption but cannot produce a genuine issue of material fact for trial on this issue, Plaintiffs are entitled to summary judgment in their favor finding that the MCA exemption is inapplicable in this case.

5.     Plaintiffs attach the following exhibits to their Motion:

Exhibit 1 - 30(b)(6) Deposition of Malcolm Sneed, 106:3-7, Sept. 28, 2015;

Exhibit 2 - Brice Dep. 20:2-5, 20:11-17, 27:12-19, 29:6–30:25, 33:10–14, 35:12–16, 37:1-21, 42:3-20, 43:6–44:4, 45:6–46:5, 46:20-47:8, 76:14-18, 77:2–9, 78:3-13, 78:21–79:2, 79:6-80:2, 81:12-21, Sept. 30, 2015;

**Page 2 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

Exhibit 3 – Roche Dep. 14:12-15:2, 20:18-21:10, 21:18-23, 25:12-20, 26:7-27:1, 27:2-8, 41:11-25,  45:11-17, 45:18-46-9, 46:21-47:2, Sept. 30, 2015;

Exhibit 4 – Wedgeworth Dep. 17:17-19:2, 27:18-28:3, 32:10-24, 35:20-36:4, 36:16-18, 38:4-6, 38:7-15, 40:23-41:2, 47:17-23, 53:2-14, 60:23-63:11, 63:12-24, Oct. 2, 2015;

Exhibit 5 - Schell Dep. 14:9-11, 17:7-19:7, 20:11-16, 26:16-21, 34:16-25, 37:22-38:6, 56:9-15, 56:24-57:13, 58:1-24, Oct. 2, 2015;

Exhibit 6 - 30(b)(6) Deposition of Brian Keith Anglin, Sr., 8:20-9:2, 9:2-7,10:2-23, 11:4-12:24, 15:4-16:1, 18:23-19:10, 19:11-22:23, 22:24-26:23, 34:9-36:25, Sept. 29, 2015;

Exhibit 7 - Josey Dep, 11:23-12:1, 14:12-24, 21:4-11, 21:21-22:2, 22:8-13, 22:14-20, 23:10-14, 31:17-23, 33:6-12, 49:7-11, Sept. 30, 2015;

Exhibit 8 – Griffin Dep. 12:18-19, 15:7-15, 16:17-17:8, 19:5-22, 23:21-25, 34:21-35:3, 38:7-25, 39:3-15, Oct. 2, 2015;

Exhibit 9 - Label on the inside of Plaintiff Shell's F-250 pickup truck; and

Exhibit 10 - S-3 Competency Requirements for Hands and Supervisors.

Pursuant to the Agreed Confidentiality and Protective Order (ECF No. 148) all exhibits are filed under seal.

6.    Because this motion is dispositive, Plaintiffs' counsel did not confer with Defendants' attorney pursuant to Local Rule 7.1(d)(1).

WHEREFORE, premises considered, Plaintiffs pray that the Court grant summary judgment in Plaintiffs' favor on the limited issue of the inapplicability of the MCA exemption; for costs and reasonable attorney's fees; and for all other good and proper relief to which they may be entitled.

Page 3 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON THE INAPPLICABILITY
OF THE MOTOR CARRIER ACT EXEMPTION**

## I.   INTRODUCTION

Plaintiffs and opt-in Plaintiffs are one hundred thirty-five (135) former and current employees of S-3.  S-3 is a high pressure pumping business, which provides a variety of pumping services, such as pump downs, coil tubing pumping, casing tests, testing of plugs, and breakdowns for pre-frac analysis, in areas such as Arkansas, Texas, Ohio, Louisiana, Mississippi, Pennsylvania, Virginia, Oklahoma and North Dakota.[1]  Plaintiffs are or were employed as either Pump Supervisors (aka Field Operators/Supervisors) or Pump Assistants (aka Field Hands/Assistant Operators) by S-3.[2]  (Some Plaintiffs held both positions sequentially, but never both at the same time.)   A crew consisting of a Hand and a Supervisor usually traveled to the various oilfield locations where S-3 performed pump operation services.[3]   The crew remained at a job site for extended periods of time, during which time they stayed in man-camps or hotels.[4]

---

[1]     See, Excerpts from Defendant's Website. ECF No. 034-5; See Ex. C, Excerpts from Defendant's Website. ECF No. 034-5; Declaration of Justino Pena (hereinafter "Decl. Pena") ¶ 6. ECF No. 034-7; Declaration of Jeff Grabner (hereinafter "Decl. Grabner") ¶ 6. ECF No. 034-8; Declaration of Patrick Masterson (hereinafter "Decl. Masterson") ¶ 6. ECF No. 034-9. Declaration of James Wedgeworth (hereinafter "Decl. Wedgeworth") ¶ 6. ECF No. 034-10; Declaration of Michael Hatala (hereinafter "Decl. Hatala") ¶ 6. ECF No. 034-11; Declaration of Mark Burton (hereinafter "Decl. Burton") ¶ 6. ECF No. 034-12.  See also Malcolm Sneed Dep. 106:3-7, Sept. 28, 2015, attached hereto as Exhibit 1.

[2]     ECF No. 75.

[3]     Brice Dep. 27:12-19, Sept. 30, 2015, attached hereto as Exhibit 2; Roche Dep. 41:11-25, Sept. 30, 2015; attached hereto as Exhibit 3; Wedgeworth Dep. 17:17-19:2, 32:10-24, Oct. 2, 2015, attached hereto as Exhibit 4; Schell Dep. 17:7-19:7, Oct. 2, 2015, attached hereto as Exhibit 5; 30(b)(6) Deposition of Brian Keith Anglin, Sr.,9:2-7, 10:2-23, Sept. 29, 2015, attached hereto as Exhibit 6.

[4]     Decl. Pena ¶ 24. ECF No. 034-7; Decl. Grabner ¶ 24. ECF No. 034-8; Decl. Masterson ¶ 24. ECF No. 034-9; Decl. Wedgeworth ¶ 24; Decl. Burton ¶ 24. ECF No. 034-12. See also Brice Dep. 42:3-20, 45:11-46:5; Josey Dep, 31:17-23, Sept. 30, 2015, attached hereto as Exhibit 7; Wedgeworth Dep. 27:18-28:3, Schell Dep. 14:9-11, 20:11-16; Griffin Dep. 12:18-19, 34:21-35:3, Oct. 2, 2015, attached hereto as Exhibit 8; 30(b)(6) Deposition of Anglin 34:9-36:25.

Page 4 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

Occasionally, some or most Plaintiffs drove one or more Peterbilt tractor-trailer rigs loaded with pumps or Ford F-250 pickup trucks (or other similar style of pickup truck) pulling a trailer loaded with a "command center" or transfer pumps to the job site.[5]  When both a command center and a transfer pumps were required for a job, the F-250 be driven from Defendant's yard with one piece of equipment that would be detached at the job site, and then the F-250 would be driven back to the yard with no trailer attached to retrieve the next piece of equipment.[6]

The command center and transfer pumps were detached from F-250s upon arrival to the job site.[7]  The command center and pumps stayed onsite for days or weeks, until the job was finished.  Sometimes, Plaintiffs had some hand tools in F-250s, such as a hammer, pipe wrench, and other types of wrenches.[8]

All Plaintiffs regularly drove an F-250 (or other similar style of pickup truck such as a Ford F-150 or Ranger) without a trailer of any sort attached, including trips back to the yard to retrieve equipment and trips back and forth from the man camps or hotels to the job site.[9]  The man camps were frequently located one or more hours from the job sites,

---

[5]     Brice Dep. 29:24–30:25, 33:10–14, 35:12–16, 37:1-21; Roche Dep.  20:18-21:10, 21:18-23; Josey Dep. 21:4-11, 23:10-14; Wedgeworth Dep. 35:20-36:4, 38:7-15; Schell Dep. 26:18-21; Griffin Dep. 15:7-15, 16:17-17:8; 30(b)(6) Deposition of Anglin 10:2-23.

[6]     Brice Dep. 37:1–16; Josey Dep. 21:21-22:2, 22:14-20; Schell Dep. 56:24-57:13; 30(b)(6) Deposition of Anglin 11:4-12:24.

[7]     Brice Dep. 46:20-47:8; Josey Dep. 22:8-13; Schell Dep. 37:22-38:6, 56:24-57:13.

[8]     Brice Dep. 38:19–39:8, 46:20-47:8; Josey Dep. 27:11-14, 28:17-29:4; 47:4-21; Roche Dep. 26:7-27:1; Wedgeworth Dep. 63:12-24; Schell Dep. 34:16-25; Griffin Dep. 39:3-15.

[9]     Brice Dep.  37:1–16,  43:6–44:4;  Josey  Dep.  21:21-22:2;  Roche  Dep.  25:12-20; Wedgeworth Dep. 36:16-18, 38:4-6, 60:23-63:11; Schell Dep. 56:11-15; Griffin Dep. 38:7-25; 30(b)(6) Deposition of Anglin 11:4-12:24.

Page 5 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

and Plaintiffs sometimes had to cross the state lines, or travel on interstate highways to get to the man camps or hotels.[10]

All Plaintiffs regularly drove and were expected to drive F-250, F-150, and Ford Ranger pick-ups from one job site to another as a part of their job duties.[11]  Plaintiffs drove the F-250 without a trailer attached on a daily basis.[12]   All Plaintiffs drove the Ford F-250 for Defendant *far more frequently* than they drove commercial motor vehicles with gross vehicle weight ratings of more than 10,000 pounds.[13]  All Plaintiffs performed inspections and/or maintenance on the F-250 each week that they worked for Defendant.[14]

The F-250s and similar pickup trucks that all Plaintiffs worked with had a gross vehicle weight rating of 10,000 pounds or less.[15] The gross vehicle weight ratings of the Ford F-250 pickup trucks can be determined by examining the manufacturer's label on the inside of the driver's side door.[16] The F-250 pickup trucks did not require a CDL to operate.[17]

In sum, as set forth above, throughout Plaintiffs' entire employment with Defendant and as part of Plaintiffs' required job duties, Plaintiffs worked with, worked on, drove,

---

[10]     Brice Dep. 45:6–46:5; Wedgeworth Dep. 53:2-14; Griffin Dep. 38:7-25.
[11]     Brice Dep. 78:3-13; Josey Dep. 21:21-22:2, 48:22-49:6; Roche Dep. 45:11-17; Wedgeworth Dep. 63:12-24; Griffin Dep. 38:7-25; 30(b)(6) Deposition of Anglin 11:4-12:24.
[12]     Brice Dep. 77:2–6; Josey Dep. 21:21-22:2; Roche Dep. 46:21-47:2; Wedgeworth Dep. 36:16-18, 38:4-6; Schell Dep. 56:9-15; Griffin Dep. 38:7-25.
[13]     Brice Dep. 29:6–30:9; 81:12-21; Josey Dep. 21:4-11, 23:10-14; Roche Dep. 45:18-46-9; Wedgeworth Dep. 27:18-28:3, 36:16-18; Griffin Dep. 39:3-15; 30(b)(6) Deposition of Anglin 11:4-12:24.
[14]     Brice Dep. 76:14-18; 77:7-9, 79:6-80:2; Josey Dep. 33:6-12, 49:7-11; Roche Dep. 27:2-8, 45:11-14; Wedgeworth Dep. 47:17-23; Schell Dep. 56:16-23;  Griffin Dep. 23:21-25.
[15]     Brice Dep. 43:25-44:4, 78:21–79:2; Schell Dep. 58:1-24; Griffin Dep. 39:3-15.
[16]     Schell Dep. 58:1-24; *see also* Manufacturer's Label on the inside of Plaintiff Shell's F-250 pickup truck, attached hereto as Exhibit 9.
[17]     Brice Dep. 20:2-5, 20:11-17, 27:13-15; Josey Dep. 11:23-12:1, 14:12-24; Roche Dep. 14:12-15:2; Wedgeworth Dep. 40-23-41:2, Schell Dep. 26:16-19; Griffin Dep. 19:5-22; 30(b)(6) Deposition of Anglin 8:20-9:2, 18:23-19:10.

**Page 6 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

loaded or performed mechanic and maintenance duties on pickup trucks, including but not limited to, the F-250 pickup trucks frequently, and far more frequently than on a weekly basis.  Plaintiffs worked with, worked on, drove or loaded the above described pickup trucks during every week of Plaintiffs' scheduled shifts in interstate or foreign commerce carrying Defendant's property on public highways and as part of Plaintiffs' required job duties.  Plaintiffs had a reasonable expectation that they would drive, load and work with Defendant's Ford F-250 pickups or similar vehicles with gross vehicle weight ratings of 10,000 pounds or less on a weekly basis and that they would cross state lines in doing so. Furthermore, Defendants' job descriptions for Hands and Supervisors did not mention driving as a job duty.[18]  Rather, the job duties of Hands and Supervisors were the job duties of oilfield workers, not over-the-road truckers.

Plaintiffs assert that they were misclassified as salaried employees, when in reality they were non-exempt from the requirements of the Fair Labor Standards Act. ("FLSA").  Plaintiffs worked hours far in excess of forty per week and were not paid overtime for their hours worked in excess of forty (40) per week.[19]  Because Plaintiffs were required to drive and perform maintenance weekly on Ford F-250 pickup trucks weighing less than 10,001 pounds, the MCA Exemption is not applicable to Plaintiffs and may not be used to deny Plaintiffs their entitlement to overtime pay under the FLSA. Plaintiffs are entitled to a judgment as a matter of law on the inapplicability of the MCA

---

[18]     *See* S-3 Competency Requirements for Hands and Supervisors, attached hereto as Exhibit 10.  See also 30(b)(6) Deposition of Anglin 15:4-16:1, 19:11-22:23, 22:24-26:23.

[19]     Decl. Pena ¶ 4, 17. ECF No. 034-7; Decl. Grabner ¶ 4, 17. ECF No. 034-8; Decl. Masterson ¶ 4, 17. ECF No. 034-9; Decl. Wedgeworth ¶ 4, 17; Decl. Burton ¶ 4, 17. ECF No. 034-12.

**Page 7 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

Exemption. No issue of material fact exists as Plaintiffs' job duties, and Plaintiffs are entitled to a judgment as a matter of law on inapplicability of the MCA Exemption.

## II.  ARGUMENT

A.  ***The MCA Exemption – Like All FLSA Exemptions – Must Be Construed Narrowly and against the Employer***

Section 7 of the FLSA entitles employees to overtime premium pay equaling one and one-half times their regular pay rate for hours worked over 40 per week. *See* 29 U.S.C. § 207(a)(1). In *Parker v. NutriSystem, Inc.*, 620 F.3d 274 (3rd Cir. 2010), the Third Circuit described the public policy underlying the overtime pay mandate:

> Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (*quoting* 29 U.S.C. § 202(a)). The Act was designed "to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" *Id.* (*quoting* 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)).
>
> The legislative history of the overtime compensation provisions of the FLSA reveal a threefold purpose underlying them: (1) to prevent workers who, perhaps out of desperation, are willing to work abnormally long hours from taking jobs away from workers who prefer shorter hours, including union members; (2) to spread available work among a larger number of workers and thereby reduce unemployment; and (3) to compensate overtime workers for the increased risk of workplace accidents they might face from exhaustion or overexertion. *Mechmet* [*v. Four Seasons Hotels, Ltd.*], 825 F.2d at 1175-76 (7th Cir. 1987) (citing H.R. Rep. No. 1452, 75th Cong., 1st Sess. (1937); S. Rep. No. 884, 75th Cong., 1st Sess. (1937)).

*Id.* at 279; *see also A.H. Phillips v. Walling*, 324 U.S. 490, 493, 65 S. Ct. 807; 89 L. Ed. 1095 (1945); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981). The Supreme Court has held that this "broad remedial

Page 8 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

goal of the [FLSA] should be enforced to the full extent of its terms." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S. Ct. 482; 107 L. Ed. 2d 480 (1989).

An employer bears a substantial burden to show that its employees fall within the § 13(b)(1) exemption and thus stand outside the FLSA's overtime provisions. *Songer*, 618 F.3d at 471; *Gonzalez v. Smith International, Inc.*, 2010 WL 8971797, at * 10 (S.D. Tex. Jan. 29, 2010). The employer must prove that the employee falls "plainly and unmistakably" within the terms of the exemption. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Owens v. CEVA Logistics/TNT*, 2012 WL 6691115, at * 5 (S.D. Tex. Dec. 21, 2012). Moreover, because of the FLSA's remedial goals, its exemptions—including the Motor Carrier Act exemption—must be read narrowly. *Gonzalez*, 2010 WL 8971797, at * 10.

The primary issue in this case is whether Plaintiffs are exempt from the overtime requirements of the FLSA under the Motor Carrier Act exemption or whether they are nonetheless subject to the FLSA's overtime requirements under the TCA as "covered employees".  It is absolutely indisputable that Plaintiffs worked "in whole or **in part**" with vehicles with gross vehicle weight ratings of less than 10,001 pounds during every week and as a regular part their employment with Defendant, entitling them to overtime wages as shown above and further explained below.

### B.    The MCA Exemption and Recent Legislative Changes

The MCA Exemption excludes from the FLSA's overtime pay mandate "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502

Page 9 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

of title 49." 29 U.S.C. § 213(b)(1). Specifically, Congress provided for the Secretary of Transportation (or "DOT") to "prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier," 49 U.S.C. § 31502(b), if it provides interstate transportation of property or passengers, *Id.* at § 13501(1).

### 1.    The 2005 Change in the Definition of "Motor Carrier"

Prior to August of 2005, a "motor carrier" was defined as a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12) (2000). However, on August 10, 2005, the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, Pub. L. No. 109-59, § 4142(a), 119 Stat. 114, 1747 ("SAFETEA-LU") was enacted.

As part of this legislation, SAFETEA-LU changed the definition of a "motor carrier" in the MCA to "a person providing *commercial* motor vehicle (as defined in [49 U.S.C. §] 31132) transportation." 49 U.S.C. § 13102(14) (2005) (emphasis added). The term "commercial motor vehicle" was defined as:

> a self -propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle -- (A) **has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds**, whichever is greater; (B) is designed or used to transport more than 8 passengers (including the driver) for compensation; (C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; **or** (D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under 5103.

**Page 10 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

49 U.S.C. § 31132(1) (emphasis added). By replacing the term "motor vehicle" with "commercial motor vehicle":

> Those who did not use commercial motor vehicles were no longer considered motor carriers. Consequently, for those persons or entities who did not operate commercial motor vehicles, the Motor Carrier Act exemption would not apply because the Secretary of Transportation no longer had regulatory authority. These carriers were now within the Department of Labor's jurisdiction and employers could be required to provide overtime compensation.

*Mayan v. Rydbom Express, Inc.*, 07-cv-2658, 2009 U.S. Dist. LEXIS 90525, *12-13 (E.D. Pa. Sept. 30, 2009); *see also Bedoya v. Aventura Limousine & Transp. Serv.*, 11-cv-24432, 2012 U.S. Dist. LEXIS 128826, *7-8 (S.D. Fla. Sept. 11, 2012) ("Thus, beginning in 2005, a motor carrier was exempt from having to pay its employees overtime *only if* the vehicles the motor carrier owned: '(1) traveled . . . in interstate commerce; and (2) weighed over 10,001 pounds [or] were designed to transport more than 8 passengers including the driver . . . .' This represented a fairly significant change, as 'employees of motor carriers . . . historically ha[d] not been entitled to overtime compensation.'") (internal citations omitted).

### 2.    The MCA After the SAFETEA-LU Technical Corrections Act of 2008

On June 6, 2008, Congress enacted the SAFETEA-LU Technical Corrections Act ("TCA") of 2008, Pub. L. No. 110-244, 122 Stat. 1572, 1620.  For purposes of this lawsuit, the TCA made two notable alterations to SAFETEA-LU.  First, Section 305(c) of the TCA (entitled "Definitions Relating to Motor Carriers") eliminated the SAFETEA-LU's definition of "commercial motor carrier" and reinserted the prior definition of "motor carrier."  *Id.*  This change "expanded the scope of the [DOT]'s authority to entities that operated *any kind*

Page 11 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

*of vehicle*, *see* 49 U.S.C. § 13102(16), not merely entities that operated commercial motor vehicles." *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 704 (S.D. Tex. 2012) (emphasis added).

Second, Section 306 of the TCA (entitled "Applicability of the Fair Labor Standards Act Requirement and Limitation on Liability") addressed the scope of the MCA Exemption to the FLSA's overtime premium mandate. *Id.* Section 306(a) provides that: "Beginning on the date of enactment of this Act, section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) shall apply to a *covered employee* notwithstanding [the MCA Exemption]." *Id.* (emphasis added). Section 306(c) defines a "covered employee" as follows:

> COVERED EMPLOYEE DEFINED. – In this section, the term "*covered employee*" means an individual –
> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);
> (2) whose work, *in whole or in part*, is defined –
> (A) as that of a driver, driver's helper, loader, or mechanic; and
> (B) *as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less* in transportation on public highways in interstate or foreign commerce, except vehicles –
> (i) designed or used to transport more than 8 passengers (including the driver) for compensation;
> (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or
> (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* (emphasis added). As the Southern District of Texas observed in *Allen v. Coil Tubing Servs., L.L.C.*:

**Page 12 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

This change thus narrowed the range of employees who were covered by the MCA Exemption. By this provision, Congress broke with its legislative tradition pursuant to which expansion of the [DOT]'s jurisdiction concomitantly narrowed the reach of the DOL's authority and thus the applicability of FLSA overtime provisions. Notwithstanding the MCA Exemption, under the TCA, the FLSA's overtime provisions now apply to any 'covered employee' as defined in section 306. In substance, under the TCA, an employee of a motor carrier or motor private carrier … who works with 'non-commercial motor vehicles' defined as vehicles weighing 10,000 pounds or less may now be entitled to overtime compensation.

846 F. Supp. 2d at 692-93 (internal citations omitted); *see also O'Brien v. Lifestyle Transp., Inc.*, 956 F. Supp. 2d 300, 305 (D. Mass. 2013) ("Thus, even if subject to the jurisdiction of the Secretary of Transportation, an employer may still be obligated to pay its employees overtime if the employees meet the definition of a covered employee. And only those employees who operate vehicles of 10,000 pounds or less are 'covered employees.'"); *Vanzzini v. Action Meat Distribs.*, 11-cv-4173, 2014 U.S. Dist. LEXIS 13781, *20 (S.D. Tex. Jan. 31, 2014) ("[T]he TCA both restored the scope of the Secretary of Transportation's regulatory jurisdiction to what it was prior to the enactment of SAFETEA-LU, and simultaneously narrowed the scope of the MCA [E]xemption.").

### 3. *The Clear Unambiguous Language of the TCA Narrows the Scope of the MCA Exemption*

As discussed, Section 306 of the TCA made significant alterations to the MCA Exemption in June of 2008 by limiting those individuals who are excluded from the FLSA's overtime premium compensation mandate while still retaining the DOT's jurisdiction over such employees. Specifically, the definition of "covered employees" entitled to FLSA overtime payments was expanded to include those individuals "whose work, in whole or *in part*, is defined . . . as affecting the safety of operation of motor vehicles weighing

Page 13 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

10,000 pounds or less in transportation on public highways in interstate or foreign commerce." *See* TCA at Section 306(c) (emphasis added).

Congress' intention to extend the overtime premium compensation requirement to those individuals whose employment concerns 10,000 pound or less vehicles during at least part of their employment is clear based on the plain and unambiguous language of the TCA.  As the Third Circuit Court of Appeals has repeatedly recognized:

> The role of the courts in interpreting a statute is to give effect to Congress's intent. Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with plain language of the statute itself.
>
> Where the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result. Moreover, a court may depart from the plain language of a statute only by an extraordinary showing of a contrary congressional intent in the legislative history. In interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous.

*Idahoan Fresh v. Advantage Produce*, 157 F.3d 197, 202 (3d Cir. 1998) (internal quotations and citations omitted); *see also Parker*, 620 F.3d at 277-78; *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001). Furthermore, although a statute should be interpreted in a fashion that does not defeat the congressional purpose, *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454-55, 109 S.Ct. 2558, 2266-67, 105 L.Ed.2d 377 (1989), **a court may not rewrite an unambiguous law**. *Friedrich v. United States Computer Services,* 974 F.2d 409, 419 (3d Cir. 1992) (emphasis supplied). Even if the court does not believe that Congress intended a specific outcome when it drafted a law, the court "must give effect to the unambiguously expressed intent of Congress."

**Page 14 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

*Friends of Sakonnet v. Dutra*, 738 F.Supp. 623, 633 (D.R.I.1990) (*citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)).

The TCA's insertion of the phrase "in part" represented a significant legislative change to the parameters of the MCA Exemption because it required that employees' work only involve the operation of vehicles weighing less than 10,001 pounds during a portion of their employment to be entitled to the FLSA's overtime protections. The Supreme Court has repeatedly recognized that the terms such as "work" are to be construed "broadly." *See*, *e.g.*, *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25-28, 126 S. Ct. 514; 163 L. Ed. 2d 288 (2005).  Thus, Congress' utilization of such broad terms to define "covered employees" logically leads to the conclusion that its intention was that simply a more generalized analysis of the duties performed throughout an individual's employment is all that is required.

Furthermore, the TCA's "in whole or in part" language as applied to Plaintiffs' employment should be consistent with our Supreme Court's interpretation of identical language in the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq. See CSX Transportation, Inc. v. McBride*, _ U.S. _, 131 S. Ct. 2630, 180 L. Ed. 2d 637 (2011). *CSX Transportation* concerned the appropriate causation jury charge for cases arising under § 51 of FELA, which "renders railroads liable for employees' injuries or deaths 'resulting ***in whole or in part*** from [carrier] negligence.'" *Id.* at 2634; *see also* 45 U.S.C. § 51 ("Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting

**Page 15 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . .").

The Supreme Court held that FELA's "in part" phrase should be interpreted in accordance with the language Congress expressly utilized and include conduct "'*no matter how small*.'" *CSX Transportation*, 131 S. Ct. at 2644. (emphasis added); *see also id.* at 2634 ("The charge proper in FELA cases, we hold, simply tracks the language Congress employed, informing juries that a defendant railroad caused or contributed to a plaintiff employee's injury if the railroad's negligence played *any part* in bringing about the injury.") (emphasis added). In reaching this conclusion, the *CSX Transportation* Court relied on FELA's "'humanitarian'" and "'remedial goal[s],'" *id.* at 2636, which mimic the objectives of the FLSA, *see* pages 11-12, *supra*.

### 4.   Federal Courts Across the Country Have Similarly Relied on the Plain Meaning of "In Part" to Recognize the Expansion of the FLSA's Overtime Protections Through the TCA

Several courts have noticed that the TCA limited the MCA Exemption and provided the FLSA's overtime protections to individuals who worked on vehicles weighing both more and less than 10,001 pounds. These opinions include:

- *Aikins v. Warrior Energy Servs. Corp.*, 2015 U.S. Dist. LEXIS 32870 (S.D. Tex. Mar. 17, 2015) ("This Court declines to adopt a reading of the TCA that any significant use of vehicles weighing more than 10,000 pounds excludes an employee from FLSA coverage).

- *McMaster v. E. Armored Servs., Inc.*, 2013 WL 1288613, *4 (D.N.J. March 26, 2013) ("The [TCA] clearly defines a covered employee to include individuals "whose work, in whole or in part . . . affect[s] the safety of operation of" non-commercial vehicles. [TCA] § 306(c)(2). It is embedded in the very definition of 'covered employees' that an employee's work need only involve the operation of non-commercial motor vehicles, in part, to be entitled to overtime.")

**Page 16 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

- *Allen v. Coil Tubing Services, L.L.C.*, 846 F. Supp. 2d 678, 705 (S.D. Tex. 2012) ("To be entitled to overtime pay, an employee must perform some meaningful work for more than an insubstantial time with vehicles weighing 10,000 pounds or less."

- *O'Brien v. Lifestyle Transp., Inc.*, 956 F. Supp. 2d 300, 305 (D. Mass. 2013) ("In sum, covered employees are entitled to overtime, regardless of the MCA [E]xemption. The test is clear: if an employee works as a driver of motor vehicles that weigh less than 10,000 pounds in the provision of interstate transportation and is employed by a motor carrier, that employee is entitled to overtime pay under the FLSA.").

- *Vanzzini v. Action Meat Distribs.*, 11-cv-4173, 2014 U.S. Dist. LEXIS 13781, *25-27 (S.D. Tex. Jan. 31, 2014) ("After the SAFETEA-LU and TCA amendments, truck weight can be dispositive because the ***TCA carved out from the MCA exemption*** those drivers working with trucks weighing less than 10,000 pounds." The court denied the employer's summary judgment motion because a particular plaintiff "***may*** have been given an assignment to complete a business-related task" using a vehicle weighing less than 10,000 pounds) (emphasis added).

- *Botero v. Commonwealth Limousine Serv.*, 12-cv-10428, 2013 U.S. Dist. LEXIS 104947, *36 (D. Mass. Apr. 12, 2013) ("the TCA expressly recognized that covered employees would receive compensation under the FLSA even though they were under the jurisdiction of the [DoT]. Moreover, the statutory language notes that there is overtime coverage if the employee's work "in whole or in part" is on vehicles that weigh less than 10,000 pounds.").

- *Westberry v. William Joule Marine Transp., Inc.*, 12-cv-486, 2013 U.S. Dist. LEXIS 24882, *10 (M.D. Fla. Feb. 22, 2013) ("[A]lthough Plaintiffs as escort drivers affected the safety of the operation of the 18-wheeler semitrucks, i.e., motor vehicles weighing 10,001 pounds or more, Plaintiffs also affected the safety of the operation of the vehicles they were driving and those vehicles undisputably weighed 10,000 pounds or less. Thus, Plaintiffs are covered employees because their work, at least in part, was that of a driver affecting the safety of the operation of a vehicle weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, and who performed duties on that vehicle.").

- *Hernandez v. Alpine Logistics, LLC*, 08-cv-6254, 2011 U.S. Dist. LEXIS 96708, *14, *17-18 (W.D.N.Y. Aug. 29, 2011) ("Congress determined that even if the [MCA] Exemption applied to certain drivers, those drivers would still nevertheless be entitled to overtime compensation if they qualified as 'covered employees'" because "Section 306, clearly and unmistakably, provides that notwithstanding the existence of the [MCA] Exemption, employees who work on exclusively or in part

**Page 17 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

on vehicles weighing less than 10,000 pounds are entitled to overtime compensation.").

- *Mayan v. Rydbom Express, Inc.*, 07-cv-2658, 2009 U.S. Dist. LEXIS 90525, *31 (E.D. Pa. Sept. 30, 2009) (holding that "Section 306(c) [of the TCA] clearly states that the employee's work need only 'in whole or in part' affect the safety of operation of vehicles weighing 10,000 pounds or less. . . . In short, the employees must simply perform *some work* on such vehicles" to be entitled to overtime pay).

Several of these courts reached this conclusion regarding the post-TCA claims even though the employees at issue *could have been asked* to operate vehicles weighing more than 10,000 *at any time* as part of their employment. *See*, *e.g.*, *Hernandez*, 08-cv-6254, 2011 U.S. Dist. LEXIS 96708, *4 ("Under the terms of their employment, any of the drivers could be required to drive any one of the vehicles regardless of its weight."); *Mayan*, 07-cv-2658, 2009 U.S. Dist. LEXIS 90525, at *3 ("A driver might drive a vehicle weighing more than 10,000 pounds on one day and then a vehicle weighing less than 10,000 pounds on the next day. Consequently, all drivers were trained to operate *any* of the vehicles in the fleet."). Thus, it is clear from the "in whole or in part" language of TCA section 306(c)(2) that Congress contemplated mixed fleets and duties and nevertheless determined that drivers and other employees working with vehicles weighing 10,000 pounds or less should receive overtime pay under the FLSA if their duties included, even in part, driving or working with noncommercial motor vehicles.

Even in cases that did not concern drivers of vehicles weighing both more and less than 10,000 pounds such as Plaintiffs in this lawsuit, district courts have regularly recognized that the plain and unambiguous language of the TCA drastically narrowed the confines of the MCA Exemption.

Page 18 of 22
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR
Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment
on the Inapplicability of the Motor Carrier Act Exemption

- *Brooks v. Halsted Communication, Ltd.*, 620 F. Supp. 2d 193, 198 (D. Mass. 2009) ("[T]he TCA reconfirmed that the MCA exemption was inapplicable to employees of motor carriers who drove motor vehicles that weighed 10,000 pounds or less. ***Given the sharp clarity of the TCA's language***, Defendants do not, and could not, dispute their obligation to pay FLSA overtime after June of 2008.") (emphasis added and internal citations omitted).

- *Bedoya v. Aventura Limousine & Transp. Serv.*, 11-cv-244432, 2012 U.S. Dist. LEXIS 128826, *11 (S.D. Fla. Sept. 11, 2012) ("'The Court pauses to emphasize that an employee's work need only in part involve the operation of non-commercial vehicles to be entitled to overtime. *See* Technical Corrections Act § 306(c). Thus, if more than a *de minimis* portion of Plaintiff's work involved driving non-commercial vehicles, he is eligible for overtime under the FLSA as a "covered employee.'")

- *Garza v. Smith International, Inc.*, 10-cv-100, 2011 U.S. Dist. LEXIS 22869, *8 (S.D. Tex. Mar. 7, 2011) ("The TCA reconfirmed that the MCA exemption does not apply to drivers operating motor vehicles that weigh 10,000 pounds or less.")

- *Miller v. Professional Transportation, Inc.*, 09-cv-0111, 2010 U.S. Dist.LEXIS 87940, *10-11 (S.D. Ind. Aug. 25, 2010) ("The net result of [the TCA] is that employees, who drive vehicles denoted in the Act as part of their employment that were once exempt from overtime prior to the passage of SAFETEA-LU, are now eligible for the benefits of overtime compensation by virtue of the fact that they are 'covered employees.' Covered employees are those that drive vehicles weighing 10,000 pounds gross vehicle weight or less and are designed or used to transport 8 or few passengers, including the driver.")

- *Lucas v. Bell Trans*, 773F.Supp.2d 930, 939 (D. Nev., 2011) ("That § 306 abrogates the historical motor carrier exemption is clear, because subsection (a) states that the protections of § 207 of the **FLSA shall apply to covered employees—as defined in § 306(c)—'notwithstanding section 213(b)(1) of [the FLSA] (29 U.S.C. 213(b)(1)**).'") (emphasis added).

**Page 19 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

**F.    *Plaintiffs' Work and Duties "in whole or in part" Involved Motor Vehicles with Gross Vehicle Weight Ratings of 10,000 Pounds or Less***

**1.    Plaintiffs Performed Work and Duties as Drivers "in whole or in part" Involving Motor Vehicles with Gross Vehicle Weight Ratings of 10,000 Pounds or Less**

Plaintiffs' claims arise entirely ***after*** the enactment of the TCA. As shown in Section I, Plaintiffs without a doubt performed numerous, meaningful and substantial work assignments and duties as drivers of motor vehicles with gross vehicle weight ratings of 10,000 pounds or less while employed by Defendant during the relevant time period. (*See* Exhibits 2 through 10). All deposed Plaintiffs testified that they routinely and on at least a weekly basis, and as part of their continuing job duties throughout their employment with Defendant, drove Ford F-250 pickup trucks for trips to and from well sites, and for trips to, from and between different states without any trailer attached to or towed by the Ford F-250. (Exhibits 2 through 10).  Plaintiffs state that they drove the Ford F-250s *more* than they drove commercial motor vehicles with gross vehicle weight ratings of more than 10,000 pounds. *Id.*

Plaintiffs were required to drive F250s from and to hotels or man-camps where they stayed while performing pump services at various well locations.[20]  Plaintiffs testified that it took them about an hour and more to get to the man-camp where they usually stayed.[21] The appropriate regulation that applies to the Plaintiffs' required driving and

---

[20]     Brice Dep. 37:1–16, 43:6–44:4;  Josey Dep. 21:21-22:2;  Roche Dep. 25:12-20; Wedgeworth Dep. 36:16-18, 38:4-6, 60:23-63:11; Schell Dep. 56:11-15; Griffin Dep. 38:7-25; 30(b)(6) Deposition of Anglin 11:4-12:24.

[21]     Brice Dep. 45:6–46:5; Wedgeworth Dep. 53:2-14; Griffin Dep. 38:7-25.

**Page 20 of 22**
***Jason Roche, et al. v. S-3 Pump Service, Inc., et al***
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

transporting of the Ford F-250, the crew, supplies, tools and equipment to and from the man camps/hotels to the well site locations a s described above is 29 C.F.R§ 785.41 which states in part:

> Work Performed While Traveling:
> "Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding…"

*Id.* Thus, a single trip per week driving and transporting the Ford F-250, hand tools and/or crew from the man-camp to the well-site (which each Plaintiff performed) is clearly more than *de minimis*. This is so because such driving of F-250s involves substantially more time than "only a few seconds or minutes of work". *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515. (When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded).

In short, Plaintiffs performed substantial work and duties as drivers of motor vehicles with gross vehicle weight ratings of 10,000 pounds or less on the public highways for Defendant's business-related purposes, and thus, have established that they are "covered employees" entitled to overtime wages under the FLSA notwithstanding the alleged MCA exemption.

## IV. CONCLUSION

The Technical Corrections Act of 2008 requires the application of the overtime provisions of the FLSA to Plaintiffs. Pursuant to that statute, Plaintiffs are, as a matter of law, entitled to overtime wages under the FLSA because they are "covered employees"

**Page 21 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**

under the FLSA and the Technical Corrections Act of 2008 because they performed work "in whole or in part" with vehicles with gross vehicle weight ratings of 10,000 pounds or less in performance of their duties as pump service employees.

**WHEREFORE**, premises considered, Plaintiffs Jason Roche, *et al.*, each individually and on behalf of others similarly situated, respectfully request an order of this Court granting their Motion for Partial Summary Judgment on inapplicability of the Motor Carrier Exemption, and for such other relief as may be just and proper.

Respectfully submitted,

**PLAINTIFFS JASON ROCHE, ET AL.**

SANFORD LAW FIRM, PLLC
One Financial Center
650 S. Shackleford Road, Suite 411
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

By:     */s/ Josh Sanford*
Josh Sanford
Texas. Bar No. 24077858
josh@sanfordlawfirm.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was electronically filed with the Clerk for the U.S. District Court, Western District of Texas, on October 23, 2015, using the electronic case filing system of the Court. The attorney listed below is registered to receive an electronic copy hereof.

Cary Hilburn, Esq.
Hilburn & Hilburn, PLC
220 Carroll Street, Building B
Shreveport, Louisiana 71105

/s/ Josh Sanford
**Josh Sanford**

**Page 22 of 22**
*Jason Roche, et al. v. S-3 Pump Service, Inc., et al*
**U.S.D.C. (W.D. Tex.) Case No. 5:15-cv-268-XR**
**Plaintiffs' Motion and Memorandum Brief in Support for Partial Summary Judgment**
**on the Inapplicability of the Motor Carrier Act Exemption**