In the United States District Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| Jason Roche, et al.,<br>                Plaintiffs<br><br>v.<br><br>S-3 Pump Service, Inc., et al.,<br>                Defendants. | Cause No. 5:15-cv-268-XR<br><br>Judge Xavier Rodriguez<br><br>Magistrate Primomo |

**Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment
and Cross-Motion for Summary Judgment (Employer Status of Malcolm Sneed) and
Defendants' Motion for Summary Judgment (Employer Status of Linda Sneed)**

Now come, defendant Malcolm Sneed, responding to plaintiffs' partial summary judgment motion [Doc. 171] and cross-moving for summary judgment on his "employer" status as an individual, and defendant Linda Sneed, moving for summary judgment in her favor on the same issue.

Plaintiffs are not entitled to partial summary judgment against Malcolm Sneed because he was not plaintiffs' employer, individually. Despite the fact that Mr. Sneed is the founder and CEO of the company, plaintiffs have not provided evidence sufficient to show he was involved in plaintiffs' employment, acted as a supervisor to the plaintiff employees or that he was responsible for maintaining the company's employment records. Therefore, he should not be held liable for company violations of FLSA pay regulations, if any. Defendants are also entitled to summary judgment on plaintiffs'

claims against Linda Sneed because there is no evidence that she was an "employer" under the FLSA, thus she cannot be held individually liable for wage payment practices of S3 Pump in this case, even if violations by S3 Pump were ultimately proven by plaintiffs at trial.

## I. Brief Statement of Undisputed Material Facts

### A. Malcolm Sneed

1. Malcolm Sneed incorporated S3 Pump and currently serves as its chief executive officer. (APP 002, Dep. M. Sneed 23:24-24:5)

2. Malcolm Sneed is a 50% shareholder in the company. (APP 003, Dep. M. Sneed 25:1-25:5)

3. Sneed is not responsible for payroll but does troubleshoot and sign off on solutions to problems. (APP 002, Dep. M. Sneed 21:22-22:4)

4. Malcolm Sneed does not handle payroll for the company but has a payroll manager who handles all payroll for the company and who reports directly to the vice president of the Company. (APP 002, Dep. M. Sneed 21:22-22:25)

5. S3 Pump currently employees 70 to 80 employees but has employed as many as 165 employees. (APP 002, Dep. M. Sneed 22:11-17)

6. Malcolm Sneed put together the initial handbook for the employees in 2005, when the company consisted of only two employees, Mr. Sneed and his wife. Mr. Sneed eventually passed that function over to the company's insurance carrier who

reviews it every year to determine what information is added and taken out. (APP 006, Dep. M. Sneed 78:01-79:5).

7. Mr. Sneed initially made the decision on whether to pay employees hourly or salary based on market conditions, workers' preference, Sneed's own experience growing up while working for his father, and based on his understanding of federal law and what his father's attorney told them several years ago. (APP 007, Dep. M. Sneed 82:20-85:25).

8. Mr. Sneed only supervises the following personnel who report directly to him: Nichole Scates, Courtney Sneed, Lesley Amos and Richard Silva. (APP 005, Dep. M. Sneed 73:3-9)

9. Nichole Scates and Courtney Sneed serve as vice presidents of administration who supervise accounts receivable, human resources, payroll, accounts, accounts payable, administrative assistant and IT manager. (APP 006, Dep. M. Sneed 77:3-10) Lesley Amos serves as chief financial officer and Richard Silva served as president of operations. (APP 002, Dep. M. Sneed 23:15-23)

10. Mr. Sneed rarely discusses business with hands or supervisors working at the job site, perhaps once per year at a Christmas party. (APP 005, Dep. M. Sneed 75:3-12)

11. The hiring process from the completion and review of the application to the job interview is conducted by an operations manager or human resources

personnel, not Malcolm Sneed. (APP 013-014, Dep. L. Amos, 43:5-46:13) Occasionally, the human resources manager, James Teague, hires employees, but for years one of the managers usually hires employees for S3 Pump, not Malcolm Sneed. (APP 009, Dep. M. Sneed 103:23-104:15) Plaintiff employee Jason Roche testified he was interviewed and hired by David Blain on the spot. (APP 016, Dep. J. Roche 8:12-22) Plaintiff employee James Wedgeworth testified he was interviewed with and was hired by Jason Martin. (APP 020, Dep. J. Wedgeworth 17:11-20:14) Plaintiff employee Michael Josey was interviewed and hired on the spot by Perry Pippenger. (APP 026, Dep. M. Josey 15:8-17)

11. Mr. Sneed was never interviewed by the U.S. Department of Labor on payroll matters in a recent investigation into the company's pay practices which did not result in any findings against the defendants, which included a review of the field hands' and supervisors' compensation. (APP 030, Declaration of Lesley Amos)

**B.    Linda Sneed**

12. Linda Sneed has worked as executive secretary to Malcolm Sneed at S3 Pump since the time S3 Pump was created. Linda Sneed does not work a whole lot for S3 Pump anymore. (APP 003-004, Dep. M. Sneed 25:6-13; 67:2-15)

13. Linda Sneed is a 50% shareholder in the company. (APP 003, Dep. M. Sneed 25:1-25:5)

14. Linda Sneed is not responsible for payroll and does not troubleshoot or sign off on solutions to any payroll problems. (APP 028, Declaration of Linda Sneed)

15. None of the management or operations personnel report to Linda Sneed. (APP 028, Declaration of Linda Sneed)

16. Linda Sneed has not played a role in developing or implementing any employee or payroll policies of S3 Pump except for during the first six years after the company was formed. (APP 028, Declaration of Linda Sneed)

17. Linda Sneed does not possess the power to hire and fire employees at S3 Pump. (APP 028, Declaration of Linda Sneed)

18. Linda Sneed does not supervise or control employee work schedules or conditions of employment. (APP 028, Declaration of Linda Sneed)

19. Linda Sneed does not determine the rate and method of payment of any S3 Pump employees. (APP 028, Declaration of Linda Sneed)

20. Linda Sneed does not maintain employment records for S3 Pump. (APP 028, Declaration of Linda Sneed)

## II. Arguments and Authorities

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there are no genuine issues about any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986); *Baton Rouge Oil & Chem. Workers Un. V. Exxon Mobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). A "genuine" issue is one that can be resolved only by a trier of fact, because it may be resolved in favor of either party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986); *Baton Rouge Oil & Chem. Workers Union. v. Exxon Mobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002); *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). A "material" fact is one that is outcome determinative under substantive law. *Anderson*, 477 U.S. *at* 248. The burden of proof is on the same party who would bear the burden at trial, and all reasonable doubts about the facts must be resolved in favor of the non-movant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. *at* 322. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id*. Where a plaintiff moves for summary judgment on a claim, it must establish undisputed proof of each element of the claim as a matter of law such that no reasonable trier of fact could find in favor of defendant. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). A defendant moving for summary

judgment on its affirmative defense must show the absence of a genuine dispute of material fact and establish each element of its defense as a matter of law. *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).

B. **Individuals as "employers" and the Economic Realities Test**

Under the FLSA, an **employer** is defined as "any person acting directly or indirectly in the interest of an **employer** in relation to an employee." 29 U.S.C. §203(d); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). Because the FLSA uses "employer" to define "employer," this Circuit has adopted the economic realities test to determine a party's status as an **employer** under the FLSA by evaluating whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employees work schedules and conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id.* No single factor is determinative of "employer" status. In some cases, a person may be held liable, individually, for FLSA violations where a totality of circumstances shows the economic realities are that a person is an employer for FLSA purposes.

C. **Malcolm Sneed**

Plaintiffs' evidence on Mr. Sneed falls short of satisfying the economic realities test for at least two reasons. First, plaintiffs overzealously mischaracterize Malcolm Sneed's responsibilities and involvement with employees, at least with respect to whether he was directly involved in the employment of the plaintiff field hands and

supervisors, setting schedules or supervising work of the plaintiff employees and participating in the processing company compensation and payroll. Second, in a number of cases relied upon by plaintiffs in support of their employer argument, the courts held "owners" and "shareholders" were not an "employer" to which personal liability should attach.

### 1. Plaintiffs' version of the facts under scrutiny

Plaintiffs have overstated the "facts" they argue to support an economic realities finding of Mr. Sneed as their employer as follows:

 **a.**   **"Malcolm Sneed is CEO"** – This fact is not in dispute.

 **b.**   **"Malcolm Sneed had power to hire and fire employees"** (Plaintiffs' brief, p. 7). Plaintiffs' proof is lacking in that Mr. Sneed cannot be shown to have exercised any such authority to hire or fire field hands or supervisors in the classes of employees identified as plaintiffs in this lawsuit. S3 Pump's chief financial officer, chief executive officer, and a number of the plaintiffs all testified that the hiring process was conducted by an operations manager or human resources personnel and that the field hands and supervisors were interviewed and hired on the spot by persons other than Malcolm Sneed. (APP 011-014, Dep. L. Amos, 43:5-46:13; APP 009, Dep. M. Sneed 103:23-104:15; APP 016, Dep. J. Roche 8:12-22; APP 020-023, Dep. J. Wedgeworth 17:11-20:14; APP 026, Dep. M. Josey 15:8-17) There is simply no evidence that Malcolm Sneed is involved in the hiring or firing process at S3 Pump for field hands and supervisors.

c. **"Sneed testified he set wages for employees of S-3 Pump and prepared the guidelines for wages of S-3's employees"** (Plaintiffs' brief, p. 7, citing Sneed Dep. 10:14-11:8) "Sneed prepared the guidelines for wages of S-3's employees" (Plaintiffs' brief, p. 7)  However, the deposition testimony cited by plaintiffs does not prove Sneed "set wages."  Instead, plaintiffs' citation to Mr. Sneed's deposition transcript refers to a discussion concerning deposition preparation and a sheet that show's a hand's starting wage range used by the company in the hiring process. Plaintiffs' cited proof does not support the statements of fact relied on in their brief.

d. **"Sneed was in charge of the payroll department"** (Plaintiffs' brief, p. 7; Sneed Dep. 21:22-22:4)  Plaintiffs again misrepresent the facts and overstate their position.  Sneed never testified he was in charge of payroll.  To the contrary, Sneed testified he was not involved in "doing payroll" and does not handle payroll for the company but has a payroll manager who handles all payroll for the company and who reports directly to the vice president of the Company.  (APP 002, Dep. M. Sneed 21:22-22:25)

e. **"Sneed is the highest ranking person at S-3, and all employees report to him."** (Plaintiffs' brief, p. 8; Sneed Dep. 23:12-23)  Though it is undisputed Malcolm Sneed is the highest ranking person at the company, in the proof cited by plaintiffs, Mr. Sneed expressly states he only has four people who report directly to him, Nichole Scates (Admin. VP), Courtney Sneed (Admin. VP), Lesley

Amos (CFO) and Richard Silva (Operations President). This testimony does not support plaintiffs' conclusion that "all employees report to him."

  **f. "Sneed is actively engaged into [sic] operation of S-3, has a personal office at the corporate headquarters, and works approximately 14-15 hours a day managing S-3."** (Plaintiffs' brief, p. 8) These facts are not disputed and do not have a conclusive bearing on the economic realities in this case.

  **g. "Sneed is responsible for 'everything that encompasses running a company.'"** (Plaintiffs' brief, p. 8; Sneed Dep. 69:12-24) From his answer to the question "Can you describe your regular workday?" plaintiffs urge the court to use this statement in isolation to conclude that Mr. Sneed is personally responsible under the law for every potential liability of the company. Defendants acknowledge that Mr. Sneed was active in the general operation of the company at the corporate level but would note that plaintiffs have offered no proof Mr. Sneed was directly involved in the employment of the plaintiff field hands or supervisors.

  **h. "Sneed drafted and implemented S-3's employees handbook, which has pay policies in it. He drafted S-3's training and safety manuals."** (Plaintiffs' brief, p. 9; Sneed Dep. 78:1-25, 79:14-81:2) Plaintiffs again overzealously urge the Court that a handbook drafted by Mr. Sneed included "pay policies," which it did not and which is not a fact that can be gleaned from the cited testimony. Plaintiffs also fail to point out to the Court that Mr. Sneed put together the

referenced general employee handbook when the company was first started in 2005, but has since turned that function over to the company's insurance carrier. (APP 006, Dep. M. Sneed 78:1-25)

      **i.** **"Sneed made the decision to classify S-3's oil field employees as salaried"** (Sneed Dep. 81:20-24). Though it may be true that Mr. Sneed made the initial decision to classify the S-3's oil field employees as salaried some years ago, he based his decision on the market conditions, the preferences of those employees to receive salary so they would get paid whether they were working or not, and based on his review of the law set forth in the FLSA, the MCA, his experience in driving trucks and working with his father whose lawyers helped determine the method of pay. (APP 007-008, Dep. M. Sneed, 81:15-85:25) None of Mr. Sneeds acts rise to any level of involvement or culpability that should subject him to individual liability for any FLSA violations of S3 Pump.

    **2.**     **Economic realities of Sneed's involvement with the plaintiffs**

Though plaintiffs say it would be "natural" that Mr. Sneed should be held liable individually for damages in this case as an employer, they have failed to offer sufficient proof that he is an employer. First, defendant concedes that the evidence presented for factor "3" tends to favor a finding that Malcolm Sneed was involved, at least initially, in determining the rate and method of payment of the plaintiff employees. However,

plaintiffs' proof of factors 1, 2 and 4 is lacking and disfavor Sneed being deemed an employer with individual liability for purposes of the company's FLSA liability.

The first factor, at a minimum, requires some evidence of the power to hire and fire employees.  *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014)   In addition, prior courts have repeatedly required something more than mere authority or theoretical power alone.  The courts have regularly looked to evidence of some active role by the individual defendant in the hiring or firing of the plaintiff employees to satisfy this factor.  See *Martin v. Spring Break '83 Prods., LLC*, 688 F3d 247, 251 (5th Cir. 2012)(first factor not deemed to weigh in favor of employer status where there was no evidence individual hired or fired the plaintiff employees), *See also Gray v Powers*, 673 F3d 352, 354-56 (5th Cir. 2012) (First element of economic realities test not established when the only evidence produced was that individual defendant was a member of the board that ran plaintiff's workplace and participated in a group decision to hire a general manager for the establishment but not involved in the actual hiring or firing of the plaintiff employees.)  Here, there is no evidence Malcolm Sneed personally hired or fired any of the plaintiff employees or that he was even involved in the initial screening or interview process.  In fact, S3 Pump's chief financial officer testified in great detail about the hiring process from the completion and review of the application to the job interview by an operations manager or human resources personnel.  (APP 011-014, Dep. L. Amos, 43:5-46:13) Malcolm Sneed testified that occasionally the human resources manager

James Teague hires employees, but for years one of the managers usually hires employees for S3 Pump, not Malcolm Sneed. (APP 009, Dep. M. Sneed 103:23-104:15) There is simply no evidence that Malcolm Sneed is involved in the hiring process at S3 Pump. The first factor of the economic realities test has not be satisfied by plaintiffs.

The second factor requires a showing that Sneed supervised and controlled employees work schedules and conditions of employment. *Id.* Though Sneed does directly supervise a handful of upper level management employees at S3 Pump, testimony borne out in deposition clearly shows he does not supervise the field hands or supervisors in this case. Mr. Sneed only directly supervises the following personnel who report to him: Nichole Scates, Courtney Sneed, Lesley Amos and Richard Silva. There is no evidence that Sneed personally supervised or controlled the work schedules or conditions of employment for the plaintiff field hands or supervisors. To the contrary, each of the field hands worked under a supervisor who, in turn, reported to an operations manager who supervised them. The operations managers, not Sneed, supervised the plaintiff employees. It was the operations managers who controlled the work schedules and conditions of employment for the plaintiff employees, not Sneed. This factor does not weigh in favor of Mr. Sneed, individually, as the employer of the plaintiff employees.

The fourth factor requires plaintiffs to show Sneed was responsible for records maintenance for S3 Pump. Mr. Sneed does not maintain employment records of S3

Pump. S3 Pump has had from 70-165 employees at any given time. S3 Pump has separate payroll and human resources departments who report to a company vice president, not Sneed. Employment records are not maintained by Mr. Sneed but by an assortment of personnel in traditional human resources and personnel functions within the company. The fourth and final factor of the "economic realities test" weighs against Mr. Sneed being deemed to be an employer of the plaintiff employees.

### 3. Owners and shareholders not automatically liable as employers

Finally, despite Mr. Sneed's daily involvement in the general corporate affairs of the company, his ownership interest alone is not sufficient to establish individual liability. There is no evidence of involvement to a degree that, under a totality of circumstances, should place him in the position of an employer in this case. This is not a case where individual liability should be imposed. Unlike the individual deemed an "employer" in *Reich v Circle C Invs.*, 998 F.2d 324, 329 (5th Cir. 1993), cited by plaintiffs, Mr. Sneed did not personally hire any of the plaintiff employees. He was not the immediate supervisor of any of them and did not give any of them specific instruction. Mr. Sneed does not manage company payroll or review or sign paychecks. Mr. Sneed was not even interviewed by the U.S. Department of Labor on payroll matters in a recent investigation into the company's pay practices, including those concerning the plaintiffs in this case. In another case cited by plaintiffs, *Gray v. Powers*, 673 F.3d 352, 354-572 (5th Cir. 2012), the court found that the co-owner of a company that owned a

nightclub was not the "employer" despite being a signatory on the corporate accounts and "occasionally sign[ing] several pages of pre-printed checks." In an 11th Circuit case, *Patel v. 10 Wargo*, 803 F.2d 632, 638 (11th Cir. 1986), the Court refused to hold an individual personally liable as an employer despite being both president and vice president of a corporation, as well as a director and principal stockholder where he did not "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters 'in relation to an employee.'" In each of these cases, the courts focused on the individual's operational control over the specific plaintiffs rather than general operational control over the company. Using that same logic, Mr. Sneed undeniably had general operational control over S3 Pump, but lacked specific operational control over the employment of the plaintiff field hands and supervisors to attach individual liability as an employer.[1] The facts in this case do not satisfy the economic realities of holding Mr. Sneed liable as an employer to the plaintiffs in this case and his ownership and general management of the defendant company alone should result in such individual liability for Mr. Sneed.

---

[1] Defendant brings to the Court's attention a case not cited or relied upon by plaintiffs where the U.S. Supreme Court denied certiorari in 2014, which held the CEO and principal of a corporation was deemed to be an "employer" and subject to individual liability for FLSA violations committed by the defendant company despite lack of evidence of any specific violation by the individual. In that case, the district court and appellate court relied on findings in favor of "employer" status of the individual with a showing of factors 1 and 3 only, and no evidence of factors 2 and 4. *See Irizarry v. Catsimatidis*, 722 F.3d 99 (2nd Cir. 2013), cert. denied (2014). It should be noted that one distinguishing fact of the *Catsimatidis* case was that the principal of the grocery store chain employer had involvement with the plaintiff employees in individual stores, a level of involvement not part of the facts in our case with respect to Mr. Sneed.

### D. Linda Sneed

It cannot be disputed that plaintiffs are unable to satisfy any of the factors of the Economic Realities Test with respect to Linda Sneed who cannot be deemed an "employer," under a totality of circumstances, for the purposes of FLSA liability and should be dismissed as a party-defendant in this case on summary judgment as a matter of law.

First, Linda Sneed does not possess the power to hire and fire the employees and has not done so with respect to the plaintiff employees. Though Linda Sneed admittedly owns a one-half interest in S3 Pump, she only serves at S3 Pump as executive secretary to Malcolm Sneed. She does not work every day at S3 Pump and she is not involved in the hiring or firing process any of the plaintiff employees or others who work as field hands or supervisors for S3 Pump. This factor weighs against deeming Linda Sneed an "employer".

Second, Linda Sneed has never supervised or controlled the work schedules or conditions of employment for the field hands or supervisors who are plaintiffs in this case. Linda Sneed's work at S3 Pump is that of executive secretary to Malcolm Sneed. Ms. Sneed was not an employer of the plaintiffs in this case. This factor also weighs against deeming Linda Sneed an "employer" for the purposes of this lawsuit.

As to the third and fourth factors of the economic realities test, Linda Sneed neither determines the rate or method of payment of any S3 Pump employees, nor

maintains any employment records for the company. These two factors weight against deeming Linda Sneed an "employer" under the FLSA.

Since the undisputed facts show plaintiffs cannot satisfy the Economic Realities Test factors which all weigh against Linda Sneed being deemed an "employer" for the purposes of this lawsuit, they cannot prove she was an "employer." Accordingly, Ms. Sneed is entitled to summary judgment against plaintiffs dismissing their claims against her for individual "employer" liability.

## Conclusion

Because the undisputed material facts show plaintiffs cannot prove Malcolm Sneed meets the economic realities test as an employer of the plaintiff employees for FLSA purposes there can be no judgment in their favor as a matter of law. Therefore, plaintiffs motion for summary judgment should be denied and defendants' cross-motion granted in favor of Malcolm Sneed on this issue.

As to Linda Sneed, since the undisputed facts show that each of the four economic realities test factors weigh in her favor, plaintiffs cannot establish a single element of their claim that she is an employer for FLSA purposes. Thus, Linda Sneed is entitled to summary judgment as a matter of law, dismissing plaintiffs' claims against her.

**Prayer**

Wherefore, defendants respectfully pray the Court deny plaintiffs' motion for summary judgment against Malcolm Sneed on the issue of whether he is an "employer" under the FLSA for the purposes of this lawsuit and grant Mr. Sneed's motion on that issue, dismissing plaintiffs' claims against him. Further, defendants pray the Court grant defendants' motion for summary judgment against plaintiffs on the issue of whether Linda Sneed is an "employer" under the FLSA for the purposes of this lawsuit, dismissing plaintiffs' claims against her.

Respectfully submitted,

_____/CAH/_____
Cary A. Hilburn (LA 26656 / TX 00790881)
Hilburn & Hilburn - APLC
220 Carroll Street, Building B
Shreveport, Louisiana 71105
Telephone: (318) 868-8810
Fax: (877) 462-6796
E-mail: cah@hilburnlaw.com

Attorneys for Defendants
S-3 Pump Service, Inc., Malcolm Sneed
and Linda Sneed

## Certificate of Service
*Electronic*

I hereby certify that on December 1, 2015, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Josh Sanford – josh@sanfordlawfirm.com
Chris Burks – chris@sanfordlawfirm.com
Sanford Law Firm, PLLC
One Financial Center
650 S. Shackleford, Suite 400
Little Rock, AR 72211


_____/CAH/_____
Cary A. Hilburn