IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JASON ROCHE, ET. AL. | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No.  5:15-CV-268-XR |
| S-3 PUMP SERVICE, INC., ET. AL. | § § § | |
| *Defendants*. | § § § § § | |

**ORDER**

On this date, the Court considered Plaintiffs' motion for partial summary judgment on the inapplicability of the Motor Carrier Act exemption (Docket No. 160); Defendants' cross motion for partial summary judgment − Motor Carrier Act exemption (Docket No. 172); Plaintiffs' motion for partial summary judgment on the inapplicability of the Fluctuating Workweek Method of calculating damages (Docket No. 167); Defendants' cross motion for summary judgment on the FWW half-time multiplier as the proper method for calculating overtime (Docket No. 175); Plaintiffs' motion for partial summary judgment regarding the employer status of Malcolm H. Sneed (Docket No. 171); Defendants' cross-motion for summary judgment regarding the employer status of Malcolm Sneed (Docket No. 174); Defendants' motion for summary judgment regarding the employer status of Linda Sneed (Docket No. 174); and the various responses and replies.

1

I.
**Standard of Review**

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

II.
**Background**

Plaintiffs bring this suit as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. S-3 Pump Service, Inc. provides products and services in the oil and gas industry in various states. Linda Sneed and Malcolm Sneed are the owners of the business. Plaintiffs claim they were improperly classified as exempt employees and not properly paid for any overtime hours they worked. Plaintiffs sought and this Court certified a class of former and current employees classified as Pump Supervisors (or Field Operators/Supervisors) in Texas, Ohio, Louisiana, Mississippi and North Dakota. Plaintiffs sought and this Court also certified a class of former and current employees classified as Pump Assistants (or Field Hands/Assistant Operators) in Texas, Ohio, Louisiana, Mississippi and North Dakota. Defendants argue, in part, that all or some of Plaintiffs' claims are barred by the Motor Carrier Act (MCA).

In the alternative, Defendants argue that if the MCA exemption is not applicable, the Court should determine that any overtime pay should be calculated by using the fluctuating

workweek multiplier of only one-half of the regular rate of pay. Plaintiffs argue that as a matter of law overtime pay should be calculated using the one and one-half times the regular rate of pay multiplier.

## III.
## Motor Carrier Act exemption

Section 207 of the FLSA requires an employer to pay overtime compensation to any employee working more than forty hours in a workweek. *See* 29 U.S.C. § 207(a)(1); *Singer v. City of Waco*, 324 F.3d 813, 818 (5th Cir. 2003).

Under the Motor Carrier Act exemption, the provisions of 29 U.S.C. § 207, however, do not apply "with respect to--(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49…." 29 U.S.C. § 213.

Section 31502 provides that the DOT "may prescribe requirements for ... qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2).

> The DOT may establish these requirements for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the [MCA] ... and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]. 29 C.F.R. § 782.2(a); *see Songer*, 618 F.3d at 472. For the motor carrier exemption to apply ... [the employees] must meet both of these requirements. *Barefoot v. Mid–Am. Dairymen, Inc.*, No. 93–1684, 1994 WL 57686, at *2 (5th Cir. Feb. 18, 1994) (per curiam) (unpublished).

*Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014).

On August 10, 2005, the Safe, Accountable, Flexible, Efficient Transportation Equity Act ("SAFETEA–LU") went into effect. SAFETEA–LU changed the definitions of "motor carrier" and "private motor carrier. *See* 49 U.S.C. § 31132. "Thus, this amendment restricted the Secretary's regulatory authority—and thereby also narrowed the MCA exemption to the FLSA's overtime requirements—to only those motor carriers and private motor carriers who operated "commercial motor vehicles (as defined in section 31132)." *Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 794 (5th Cir. 2011).

On June 6, 2008, Congress passed the SAFETEA–LU Technical Corrections Act ("TCA"). Section 305 of the TCA replaced "commercial motor vehicle" in the definitions of motor carrier and motor private carrier with "motor vehicle," essentially returning the Secretary of Transportation's authority to its pre-SAFETEA–LU scope. *Albanil*, 444 F. App'x at 795. Section 306 of the TCA also addressed application of the FLSA's overtime requirements going forward.

Accordingly, a "covered" employee, that is, one eligible for overtime wages, means:

> an individual—(1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305); (2) whose work, in whole or in part, is defined—(A) as that of a driver, driver's helper, loader, or mechanic; and (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles—(i) designed or used to transport more than 8 passengers (including the driver) for compensation; (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

SAFETEA–LU TECHNICAL CORRECTIONS ACT OF 2008, PL 110–244, June 6, 2008, 122 Stat 1572.

### A. Plaintiffs' arguments

Plaintiffs argue that they "routinely and on at least a weekly basis … drove Ford F-250 pickup trucks [or similar vehicles] for trips to and from well sites, and for trips to, from, and between different states without any trailer attached to or towed by the Ford-250." Plaintiffs concede that on a few occasions they also drove commercial motor vehicles with gross vehicle weight ratings of more than 10,000 pounds[1], but argue that they drove the Ford F-250s more than they drove the heavier vehicles. Plaintiffs further argue that pursuant to 29 C.F.R. § 785.41, they were working when travelling to and from their "man camp"/motels and well site locations because they were either driving or serving as an assistant or helper transporting crew, supplies, tools and equipment.

### B. Defendants' arguments

Defendants argue that there is no evidence that Plaintiffs drove vehicles weighing less than 10,000 pounds.[2] Defendants also argue there is no evidence that Plaintiffs drove vehicles weighing less than 10,000 pounds in interstate commerce.[3] In addition, Defendants argue that since Plaintiffs could have been called upon to drive the heavy equipment across state lines at any time, the MCA exemption applies even in workweeks where the employees performed no

---

[1] It appears uncontested that S3 Pump is a DOT-regulated employer, and that on certain occasions pump hands and supervisors operated big-rig, Peterbilt tractor-trailers and other vehicles pulling and hauling property such as 2500 HP oil and field pumps and other equipment.

[2] Defendants argue that transfer pumps and command centers were kept on trailers pulled by Ford F-250 and F-350 pickup trucks, and that caused the applicable weight to exceed 10,000 pounds.

[3] Defendants emphasize the following language: a "covered" employee means: an individual—(1) who is employed by a motor carrier; (2) whose work, in whole or in part, is defined—(A) as that of a driver, driver's helper, loader, or mechanic; and (B) as affecting the safety of operation of motor vehicles **weighing** 10,000 pounds or less in transportation on public highways in **interstate** commerce.
Defendants argue that their modified pickup trucks, *including* the usual tools and equipment loaded onto the pickup truck or trailer weighed in excess of 10,000 pounds.

such duty.  Alternatively, Defendants argue that Plaintiffs should only be considered "covered" employees in those workweeks that Plaintiffs prove they drove their pickup trucks in interstate commerce.

## IV.
## Analysis

### A.  Burden of establishing an exemption from the FLSA's overtime requirement

"Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption."  *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014).  Accordingly, an employer has the burden of establishing the applicability of the MCA exemption, including the effect of the TCA amendments.

### B.  Weighing

The Court begins with how weight should be defined (motor vehicles *weighing* 10,000 pounds or less).  Defendants argue that "actual" weight should be used.  According to Defendants this means the actual weight of any vehicle being driven, including passengers and any tools loaded onto the vehicle and the weight of any trailer and equipment being pulled by the vehicle.

The Department of Labor's Wage and Hour Division states that it "will continue to use the gross vehicle weight rating (GVWR) or gross combined vehicle weight rating in the event that the vehicle is pulling a trailer. The GVWR is found on the vehicle, usually on a plate on the door jamb."  *See* Department of Labor, Wage & Hour Division, Field Assistance Bulletin No. 2010-2.

The DOL has further opined that "TCA section 306(a) extends FLSA section 7 overtime requirements to employees covered by TCA section 306(c), notwithstanding FLSA section 13(b)(1). This means the overtime pay requirements apply to an employee of a motor carrier or motor private carrier in any workweek in which the employee works, 'in whole or in part', as a driver, driver's helper, loader or mechanic affecting the safety of operation of small vehicles on public highways in interstate or foreign commerce…. The phrase 'in whole or in part' included in the statute means an employee who performs such duties involving small vehicles for the entire week or part of the week must receive overtime pay for hours worked over 40 in that workweek. The changes made by TCA thus extend FLSA overtime protection to some employees even when such employees are also subject to the authority of the Secretary of Transportation to set maximum hours of service."

This Court acknowledges that other courts have reached a differing opinion on the issue of whether actual weight or GVWR controls. Some courts have refused to provide any form of deference to the DOL and its decision to use GVWR, and have concluded that actual weight is the correct measure. *See e.g. Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1258-59 (D. Idaho 2013) ("The TCA does not specify how vehicle weight is to be determined…. The TCA dropped any reference to GVWR or GCWR, and simply refers to 'motor vehicles weighing 10,000 pounds or less.' Thus, Congress appears to have abandoned the GVWR and GCWR standard for determining availability of the exemption. After Congress passed the TCA, the Department of Labor ("DOL") issued Field Assistance Bulletin No. 2010–2 ('the Bulletin') to explain its interpretation of the TCA. Specifically, the Bulletin announced that the Wage and Hour Division 'will continue to use the [GVWR] or [GCWR] in the event that the vehicle is

pulling a trailer' to determine vehicle weight. *Id*. This raises the question of whether the Bulletin's interpretation of the TCA is entitled to deference…. In the Court's view, the language in the TCA is not ambiguous. Therefore, the DOL's interpretation, which is contrary to the plain language of the statute, is not warranted. Moreover, the DOL Bulletin is not persuasive and runs afoul of the charge that the TCA exception be construed broadly. The DOL offers no explanation as to why it will continue to use GVWR or GCWR, despite the clear language of the statute not adopting that standard…. Therefore, in absence of any guidance from Congress and a specific definition in the TCA, the ordinary meaning of 'weight' controls.").[4]

The "actual weight" measurement does have an "ordinary meaning" appeal. The practical difficulty, however, in using this definition is that employers would be required to weigh trucks and loaded trailers on a regular basis to ensure that they may benefit from the exemption.

This Court will provide deference to the DOL's interpretation. *See also McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013). Accordingly, this Court will apply gross vehicle weight rating (GVWR) or gross combined vehicle weight rating in the event that the vehicle is pulling a trailer.

### C. Interstate commerce

Although it appears that most Plaintiffs did the majority of their work within a state and did not generally cross state lines, most cases "make clear that trips within a single state are made in interstate commerce when they are part of 'a practical continuity of movement of the

---

[4] *Glanville v. Dupar, Inc*., No. Civ. A. H-08-2537, 2009 WL 3255292, at *8 (S.D. Tex. Sept. 25, 2009)("Although the TCA does not use the terms 'commercial motor vehicle' or GCWR, neither does it use GVWR or GVW. It merely states that a 'covered employee' under the FLSA is one who operates motor vehicles 'weighing' 10,000 pounds or less. In the absence of a specific definition in the TCA, the ordinary meaning of 'weight' controls, which is the actual weight of the truck and loaded trailer.").

8

goods' in interstate commerce." *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1215 (11th Cir. 2011); *see also Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014) ("The MCA defines interstate commerce as commerce 'between a place in ... a State and a place in another State.' 49 U.S.C. § 13501(1)(A). However, this definition 'has not been applied literally by the courts. In fact, we have defined it as the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.'"). Plaintiffs have established competent summary judgment evidence that they drove F-250 pickup trucks with no trailers attached on a weekly basis delivering supplies that "flow" in interstate commerce to job sites.

### D. Defendants' argument that any substantial work on larger vehicles disqualifies an employee from the FLSA's overtime mandate

A similar argument was considered (and rejected) by the Southern District of Texas in *Aikins v. Warrior Energy Servs. Corp.*, No. 6:13-CV-54, 2015 WL 1221255 (S.D. Tex. Mar. 17, 2015). In relevant part, that Court stated:

> Given the language of section 306(c)(2), which states that a covered employee's work need only "in part" affect the safety of vehicles weighing 10,000 pounds or less, it is unsurprising that few courts have held that any substantial work on larger vehicles disqualifies an employee from the FLSA's overtime mandate…. A more plausible reading is that, in order to be owed overtime notwithstanding the MCA, an employee must both (1) perform some work that "affect[s] the safety of operation of" smaller vehicles, and (2) it must be part of the employee's "duties" to do so. The "duties" element may prevent de minimis or aberrational activities outside the scope of an employees' routine duties from qualifying an employee for TCA coverage. It does not state or imply, however, that covered employees cannot also have substantial duties involving larger vehicles. The Department of Labor has endorsed this view, noting in a guidance document that even in weeks where employees worked on vehicles weighing more than 10,000 pounds (and thus were subject to Department of Transportation regulations), those employees would still be entitled to overtime if they worked on vehicles weighing less than 10,000 pounds. *Hernandez v. Alpine Logistics, LLC*, 2011 WL 3800031, at *5 (W.D. N.Y. Aug. 29, 2011) (discussing Department of Labor, Wage & Hour Division, Fact Sheet # 19 (Nov. 2009), available at http://www.dol.gov/whd/regs/compliance/whdfs19.pdf).

*Aikins v. Warrior Energy Servs. Corp.*, 2015 WL 1221255, at *5. This Court agrees with the reasoning and analysis in *Aikins* and accordingly rejects Defendants' argument in this case. *See also McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 170, fn. 4 (3d Cir. 2015) ("Whatever 'in part' means, it is certainly satisfied by McMaster, who spent 49% of her days on vehicles less than 10,000 pounds.").

> **E. Does the exemption from overtime only apply to workweeks where employees were actually operating vehicles weighing less than 10,000 pounds? Conversely, may the employer invoke the exemption when employees are actively operating vehicles weighing more than 10,000 pounds?**

Any employee driving certain vehicles less than 10,000 pounds must be paid overtime for any hours they work in a week over 40. A "covered employee" means an individual (1) who is employed by a motor carrier or motor private carrier[5]; (2) whose work, **in whole or in part**, is defined (A) as that of a driver, driver's helper, loader, or mechanic[6]; and (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce[7]; and (3) who performs duties on motor vehicles weighing 10,000 pounds or less. See SAFETEA–LU TECHNICAL CORRECTIONS ACT OF 2008, PL 110–244, June 6, 2008, 122 Stat 1572 (emphasis added).

Given the above "in whole or in part" language, it is the employer's burden to demonstrate that the employees exclusively drove vehicles greater than 10,000 pounds during a workweek. Defendants have failed to make any such showing and Plaintiffs' summary judgment evidence refutes this argument. *See e.g. Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1260 (D. Idaho 2013); *see also, e.g., Bedoya v. Aventura Limousine & Transp. Service, Inc.*,

---

[5] It is undisputed that S-3 is a motor carrier as that term is defined in the Act.
[6] It is undisputed that all of the Plaintiffs in this case are drivers, driver's helpers or loaders.
[7] It is undisputed that the exception regarding vehicles designed or used to transport more than 8 or 15 passengers, or the exception regarding the transportation of hazardous material is not applicable in this case.

2012 WL 3962935, *4 (S.D. Fla. Sept. 11, 2012) (employees are entitled to overtime pay under the FLSA 'if more than a de minimis portion of the Plaintiff's work' is done with vehicles weighing 10,000 pounds or less); *Mayan v. Rydbom Exp., Inc.*, 2009 WL 3152136, *9 (E.D. Pa. Sept. 30, 2009) ("The employee may still qualify for overtime even if part of his or her duties involve commercial motor vehicles."); *Byers v. Care Transp. Inc.*, No. 13-CV-15174, 2015 WL 5608287, at *7 (E.D. Mich. Sept. 24, 2015).  Defendants' motion for summary judgment on this issue is denied and Plaintiffs' motion for summary judgment is granted.

## V.
## Fluctuating Workweek and Proper Overtime Rate

"Sometimes an employer will pay a *nonexempt* employee a fixed weekly wage, with the understanding that the salary is to compensate the employee for all hours worked during any workweek."  1 Wage and Hour Law § 9:9 (emphasis added).  In this case the employees were improperly classified at the onset as exempt.

Even in cases, however, where employees were misclassified as exempt, the Fifth Circuit has determined that the proper rate of overtime pay is the half-rate if the employer and employee have agreed on a fixed salary for varying hours.  *See Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 (5th Cir. 1988).  *See also* 29 C.F.R. § 778.114.

Plaintiffs argue they did not receive a "fixed salary."  Instead, they argue they received substantial, repeated, non-discretionary bonuses.  Plaintiffs also argue that there was no mutual understanding between the parties that payment was a fixed salary to work fluctuating hours. Plaintiffs argue (but as detailed below provide no competent summary judgment evidence) that they understood their salary as compensation for forty hours in a one-week period or eighty

hours in a two-week period, and that they would also receive bonuses each day based upon pumping and completion of a pump report.

Defendants argue that it is "common knowledge in the oil and gas industry" that receiving a fixed salary necessarily means fixed salary for fluctuating hours. Defendants also rely upon employee handbook sections that informed pump employees that hours are frequently adjusted. Finally, Defendants assert that no plaintiffs ever complained about the fixed salary arrangement.[8]

## VI.
## Analysis

In the Fifth Circuit, 29 C.F.R. § 778.114 is not used to support a retroactive overtime calculation in misclassification cases. *Black v. SettlePou, P.C*., 732 F.3d 492, 498 (5th Cir. 2013) (*citing Ransom*, 734 F.3d at 385). Instead, courts in the Fifth Circuit must adhere to *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) and *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988), "as the appropriate basis for using the FWW method to calculate the overtime premiums due to the employee in misclassification cases." *Black*, 732 F.3d at 498.

"The FWW method of calculating overtime premiums in a misclassification case is appropriate when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours." *Id*. Generally, the "question of whether an employer and employee agreed to a fixed weekly wage for fluctuating hours is a question of fact." *Black,* 732 F.3d at 498. "As directed by *Missel*, the FWW method may only be applied to

---

[8] As noted by the Fifth Circuit, "[t]he critical issue in this case, however, is not only whether [the employer] paid [plaintiff] a fixed salary for varying hours, but whether [the employer] and [the employee] had agreed that a fixed salary would compensate her for all of the hours she worked each week. *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013)

12

calculate overtime premiums when there is a contractual agreement between the employer and the employee that the employee will be paid a fixed weekly wage for hours that fluctuate from week to week." *Black,* 732 F.3d at 499. "However, there is no requirement that the employment agreement be in writing." *Id.*

The competent summary judgment evidence in this case demonstrates there was a clear mutual understanding that S-3 was paying its employees a fixed salary regardless of the number of hours worked.[9] Some Plaintiffs testified that there was no specific discussion of this topic at time of hiring, but there was a general understanding that they would be paid a fixed salary and receive pumping bonuses. Plaintiff Jason Roche raised a question after his employment began asking whether he was going to receive overtime for days he did not receive a pump bonus. Nevertheless, Roche does not rebut the general understanding that he was going to be paid a fixed salary for all hours worked. Many plaintiffs testified that the salary alone, without the expected bonus payments, was not an acceptable pay arrangement. That testimony, however, also does not rebut the general understanding that a fixed salary was going to be paid for all hours worked. Mr. Sneed, S-3's co-owner, testified he paid the employees a salary because most workers want the security of a paycheck in the event there is no work that week, and he paid a bonus program "on top of that." Employees apparently became aware very quickly that they were working long hours and not receiving overtime pay. They continued in their employment

---

[9] "An employer may pay an employee pursuant to [the FWW] method where: (1) the employee's hours fluctuate from week to week; (2) she receives a fixed weekly salary, regardless of the number of hours worked that week; (3) the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate; (4) the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek; and (5) the employee receives a 50 percent overtime premium in addition to the fixed weekly salary for all hours in excess of 40 worked that week." *Switzer v. Wachovia Corp.*, No. Civ. A. H-11-1604, 2012 WL 3685978, at *2 (S.D. Tex. Aug. 24, 2012) (*citing Conne v. Speedee Cash of Miss., Inc.*, 246 F. App'x 849, 851 (5th Cir. July 23, 2007).

after receipt of their first paychecks. This also constitutes some evidence that the employees were aware at time of hire that the salary covered all hours (including overtime) worked.

Defendants' cross-motion for summary judgment is granted. Plaintiffs' motion for partial summary judgment on this issue is denied. The employee has the burden of proving that the employer failed to administer the FWW method correctly. *See Switzer v. Wachovia Corp.*, No. Civ. A. H-11-1604, 2012 WL 3685978, at *2 (S.D. Tex. Aug. 24, 2012) (*citing Samson*, 242 F.3d at 636). Defendants' non-discretionary bonuses were based on pumping, not on the number of hours worked. *See Switzer v. Wachovia Corp.*, No. Civ. A. H-11-1604, 2012 WL 3685978, at *2 (S.D. Tex. Aug. 24, 2012). Accordingly, the pumping bonus did not alter the fixed salary understanding and the FWW method applies (i.e. half-rate for overtime hours), but the pump bonus must be totaled in with the salary to determine the regular rate on which overtime pay must be based. *See* 29 C.F.R. § 778.208.

**VII.**
**Employer Status of Malcolm H. Sneed**

Plaintiffs seek summary judgment establishing that Malcolm Sneed is an employer under the FLSA and accordingly personally liable for any damages in this case.

"'Employer'" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d).

"Person" means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons. 29 U.S.C. § 203(a).

"The Supreme Court has termed the Act's employer definition 'expansive' and has held that 'managerial responsibilities' and 'substantial control of the terms and conditions of the [employer's] work' create statutory employer status." *Donovan v. Grim Hotel Co*., 747 F.2d 966, 971-72 (5th Cir. 1984) (*citing Falk v. Brennan*, 414 U.S. 190, 195 (1973)). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Grim Hotel Co*., 747 F.2d at 971-72 (*citing Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

Mr. Sneed testified that for approximately ten years he has served as the chief executive officer for S-3. He drafted the employee handbook, safety manual, and "everything that a business owner has to put together." He makes the decisions on how much to pay employees based on daily market conditions. Mr. Sneed personally made the decision to pay the employees in this case on a salaried basis.

Defendants argue that Mr. Sneed should not be held personally liable for any damages in this case because he does not handle the payroll, and he only directly supervises four persons (two vice presidents of administration, the chief financial officer, and the president of operations). Defendants further argue that job interviews and hiring are done by others (either the operations manager or human resources personnel).

The Fifth Circuit uses the "economic reality" test to evaluate whether there is an employer/employee relationship. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). "In so doing, [courts must] adhere to the firmly-established guidon that the FLSA must be liberally construed to effectuate Congress' remedial intent." *Donovan v. Sabine Irrigation Co*., 695 F.2d

190, 194 (5th Cir. 1983) (*citing Donovan v. Janitorial Services, Inc*., 672 F.2d 528 (5th Cir. 1982).

"To determine whether an individual or entity is an employer, the court considers whether the alleged employer: '(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records.'" *Gray*, 673 F.3d at 355 (*quoting Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010)).[10]  "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray*, 673 F.3d at 357.

Defendants argue that Mr. Sneed did not actually interview or hire any of the plaintiffs in this case. That argument is misdirected.[11] The issue is whether Mr. Sneed possessed the power to hire and fire employees. Mr. Sneed testified that for the first six years of his business he was directly responsible for making employment decisions, but now he has intermediate managers handling human resource functions, but that he still maintains responsibility for those employment-related decisions. Mr. Sneed testified he personally reviews DOL and NTSB materials to determine how he will conduct company business. Mr. Sneed does not directly supervise any of the plaintiffs in this case. But he nevertheless controlled employee work schedules and conditions of employment by daily monitoring of the profit and loss statements, daily review of contracts with third parties, and daily monitoring of the payroll practices in the

---

[10] *See also Solis v. Universal Project Mgmt., Inc*., No. Civ. A. H-08-1517, 2009 WL 4043362, at *7 (S.D. Tex. Nov. 19, 2009) (compiling a listing of cases describing when an owner or supervisor may be found individually liable under the FLSA).

[11] Courts are concerned about this factor standing alone as being sufficient to establish liability because otherwise every foreman, supervisor and manager would be included in the definition of employer. That concern does not exist here in this case where Mr. Sneed is the owner and CEO of the corporation. *See* 1 Wage and Hour Law § 3:29

industry.[12] Mr. Sneed testified that he personally made the decision to characterize the plaintiffs in this case as exempt employees. Payroll records were maintained by his subordinates. Mr. Sneed has operating control over employees within S-3 and may be individually liable for any FLSA violations.

## VIII.
## Employer Status of Linda Sneed

Defendants oppose Plaintiffs' motion as premature because discovery is still ongoing. Alternatively, they argue that Linda Sneed's name appears on organizational charts as co-CEO. Defendants, however, have presented competent summary judgment evidence that although Ms. Sneed is co-owner of the business, her status as co-CEO reflects the marital relationship and her joint financial interest in the company. Ms. Sneed works as Mr. Sneed's executive secretary, works part-time, and has not played any active operational control since 2011. Defendant's motion on this issue is granted. To the extent that Plaintiffs have implicitly moved for a continuance in their response (no explicit motion was made), any such motion is denied. Plaintiffs have had ample time to explore this issue in the discovery that has been conducted.

## Conclusion

For the reasons stated above, Plaintiffs' motion for partial summary judgment on the inapplicability of the Motor Carrier Act exemption (Docket No. 160) is granted; Defendants' cross motion for partial summary judgment – Motor Carrier Act exemption (Docket No. 172) is denied; Plaintiffs' motion for partial summary judgment on the inapplicability of the Fluctuating Workweek method of calculating damages (Docket No. 167) is denied; and Defendants' cross motion for summary judgment on the FWW half-time multiplier as the proper method for

---

[12] In his Declaration submitted in response to Plaintiffs' motion for partial summary judgment regarding the Motor Carrier Act exemption (Docket No. 172-1), Mr. Sneed made numerous declarations regarding the Plaintiffs' conditions of employment "based upon his personal knowledge as founder and principal of defendant S3…."

calculating overtime (Docket No. 175) is granted. Plaintiffs' motion for partial summary judgment regarding the employer status of Malcolm H. Sneed (Docket No. 171) is granted; Defendants' cross-motion for summary judgment regarding the employer status of Malcolm Sneed) (Docket No. 174) is denied; and Defendants' motion for summary judgment regarding the employer status of Linda Sneed) (Docket No. 174) is granted.

SIGNED this 4th day of January, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE